No. 29,089.

BEN DARBE, *Appellee*, v. THE CRYSTAL ICE AND FUEL COMPANY, *Appellant*.

(284 Pac. 596.)

Opinion filed February 8, 1930.

*Thomas E. Wagstaff, Jay W. Scovel,* both of Independence, *W. E. Ziegler* and *Carl E. Ziegler,* both of Coffeyville, for the appellant.

*Ben W. Berg, Joe Moss,* both of Independence, and *Charles D. Welch,* of Coffeyville, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one by an employee against his employer for damages for personal injury sustained as a consequence of the employer's negligence. Plaintiff recovered, and defendant appeals.

Defendant manufactured and sold ice. Plaintiff made deliveries to retail customers from an ice wagon. While plaintiff was putting a cake of ice in a customer's ice box the hold of his tongs was released and he fell and was injured. Plaintiff accounted for the accident in two ways: first, the tongs given him to work with were dull, and he did not know it; second, the cake of ice he was handling was one which had been on the wagon for two hours the day before. He returned it to the plant, where it was kept in cold storage over night. Early the next morning he took it out for delivery before making other deliveries. It is a dangerous thing to handle such ice with tongs. That is the way all ice carried over from one day to the next is handled by all icemen, but defendant did not explain the peril to plaintiff.

The petition alleged the tongs suddenly slipped, and defendant

was negligent in failing to furnish plaintiff with sharp and proper tongs. There was no evidence anything was wrong with the tongs except that they were dull, and there was no evidence the accident was caused by slipping of dull tongs.

The customer took 300 pounds of ice in 100-pound cakes daily except Sunday. The top of the customer's ice box was three feet and ten inches from the floor. Plaintiff said the top of the box came just under his arm. The inside of the box was $34\frac{1}{2}$ inches from rim to bottom. Plaintiff said a 100-pound cake of ice is about 18 inches long, 12 inches wide, and 11 or 12 inches thick. He also said the cakes were about 18 x 14 x 12 inches. Plaintiff testified there was no way he could put a cake of ice into the box without first laying the cake on the corner of the box, and then climbing on top of the box and stooping over to lower the cake. Plaintiff himself invented this method of putting ice in the box, so he would not have to drop the ice, and, as he supposed, injure the box. On the occasion of his injury he had lowered two cakes and was in the act of lowering the third when the top of the cake gave way, and he became overbalanced and fell backwards to the concrete floor. On direct examination plaintiff testified as follows:

"I judge I had the ice within six to eight inches of the bottom of the box; the tongs came through the top of the ice, and caused me to overbalance and fall backwards."

After the accident plaintiff signed a written statement telling how the accident occurred. The statement contained the following:

"I was lowering the ice into the chest when a chunk of ice broke off, allowing the tongs to slip, and causing me to fall backwards."

When cross-examined with reference to this statement, the quoted portion was read to plaintiff, and the following occurred:

"Q. Now, did one of the pieces of ice fall off? A. It just crumpled up, the top."

The nippers of ice tongs should be sharp, because ice is hard and slippery. The points should turn up a little, so that they will pull into the ice—set the hook—as the cake is lifted. Plaintiff claimed he knew nothing about these things, and he proved them by experts. A witness for plaintiff testified that if the points do not turn up slightly, and are straight across, the pressure is through the ice, and not upward as it should be, and the points have a tendency to split through the ice. Applied to this accident, dull points pressing horizontally on the ends of an eighteen-inch cake of ice would split

through it. Plaintiff eliminated splitting through the cake of ice as cause of injury. He said the top of the cake just crumpled up, and the tongs came through the top.

A witness for plaintiff testified that good tongs should be able to take a bite in the top of a cake of ice about five inches down. Another witness said the points of tongs should drop down on the side of a cake of ice from four to six inches. Plaintiff illustrated how he used the tongs on the cakes of ice he put in the box. He said the top of the ice would be eighteen inches across, and the tongs would go down but a short distance because of a shoulder on the ice. He did not explain why he hooked the tongs in the ends of the cake instead of in the sides. He had used good tongs before he was given the dull ones, but he made no distinction between the distances good tongs and dull tongs went down, and he said that if he got the ice down in the center he could not lower it into the box. The result is that whatever the condition of the tongs he was using he was obliged to take the cake of ice above the center. This subject is not material, however, to the subject of liability based on slipping tongs.

The court gave the jury the following instruction relating to liability resulting from use of tongs which would slip:

"16. If you find and believe from the evidence that the defendant furnished to the plaintiff defective and improper tongs with which to handle ice, and that by reason of such defect, said ice was liable to slip and injure plaintiff, and that plaintiff used said tongs in the performance of his duties for the defendant, not knowing or realizing the danger attending their use, and was injured thereby on account of said defect while using the same with due care, then you are instructed that the defendant would be liable for such injury, and your verdict should be for the plaintiff."

The jury returned the following findings of fact:

"7. Do you find from the evidence that the cause of accident to plaintiff and plaintiff's injury was the fact that he fell from the ice box? A. Yes.

"10. Do you find from the evidence that the ice tongs plaintiff was using were in good condition at the time he claims he fell off the ice box and claims he was injured thereby? A. No.

"14. If you find that plaintiff was injured by reason of defective or improper tongs furnished him by the defendant, do you find that he knew or understood the danger, if any, attendant upon the use of such tongs? A. No."

The fourteenth interrogatory required no answer, unless the jury found plaintiff was injured by reason of defective tongs. The question was answered, and the necessary implication is the jury found plaintiff was injured by reason of defective tongs. There was no

evidence warranting submission of that question to the jury, and no evidence warranting the jury's conclusion.

Besides what has been said, this court holds that the simple-tool doctrine applies to the ice tongs supplied to plaintiff. The essence of that doctrine is that if the facts and the danger are within the comprehension of an ordinarily intelligent employee, who could have protected himself by giving reasonable attention to the condition of the tool, the employer is not liable for injuries received by the servant when using the tool.

The tongs constituted a holding and lifting implement free from intricacy or complexity of construction. The mechanical principle employed in their operation is the same as that involved in the operation of sugar tongs, hearth tongs, blacksmith tongs, pliers, and a host of implements having two arms joined by a pivot or spring and made to grip at one end by compressing the other. There is a notion quite generally entertained to the effect that ice is slippery; and to explain to anyone holding himself out as capable of delivering ice that the points of his tongs ought to be sharp in order to grip cakes of ice, would be like explaining to a lumber jack that his ax ought to be sharp to cut well. Tongs get dull with use. When they get dull you do with them just as you do with a plowshare. You file it on the under side for awhile, and when it gets too dull you take it to a blacksmith and have the blunted part drawn out. The testimony of the ice manufacturers and distributors called as witnesses was that the drivers look after their own tongs, and file them as needed, until they get so dull the points need to be drawn out. The practice is a perfectly fair and reasonable one, because the drivers are necessarily the first to know when their tongs begin to get dull, and when they finally get so dull they do not grip ice cakes satisfactorily.

Suppose the points of a pair of tongs do not hold a cake of ice— what happens? The cake of ice slips through, and, if unsupported, falls. What is the peril to the ice man? One peril, and the only one which need be considered now, may be illustrated. If a man at one end of a rope is tugging at something facing him at the other end, and the other end of the rope suddenly gives way, the man may fall backward. Anyone not suffering from brain fag ought to appreciate that, and if he should be perched on top of an elevated structure having no railing, he might fall off and get hurt.

Plaintiff was not an unskilled common laborer. He pleaded that

he was a mechanic by trade, capable of earning, when in good health, $150 per month. His testimony disclosed he had worked at mechanical trades both before and after he was injured. He worked for defendant long enough to be generally familiar with the use of ice tongs, and he had delivered ice to the particular ice box eight or ten times. He had used the particular tongs two days before he was injured, and the man who succeeded him went right on using the same tongs. At the trial plaintiff demonstrated the condition of the tongs by marking the nippers of a pair of good tongs. The marks he made eliminated point and curve, and he said the tongs had been filed back until they were worn out; so the defect was obvious to anybody giving slight attention to the handling of even fifty-pound cakes of ice.

The parties collate the Kansas cases in which the simple-tool doctrine has been considered. The opinions discuss the nature of the tool involved, its condition, the circumstances under which it was used, the danger to be apprehended, and the opportunity and ability of the user to know and to comprehend the risk. It is not necessary to restate and account for the various rulings, compare the facts with the facts of the instant case, and point out identities and differences. There is no decision in the Kansas reports which forbids the court to declare nonliability of the ice company as a matter of law.

Apparently tongs cases are not numerous. Tie tongs were involved in the case of *Johnson v. St. Joseph & G. I. Rly. Co.*, 125 Kan. 38, 262 Pac. 494. The decision is not apposite to the present controversy. The parties cite no tongs cases from other states, and a hasty search has disclosed but two. In the case of *Neubauer v. Northern Pacific R. Co.*, 60 Minn. 130 (1895), the court held it was a question for the jury whether an unskilled laborer assumed the risk of using large warehouse tongs, defectively constructed and out of repair, and which often lost their hold on large cakes of ice, although they had not done so with plaintiff.

In the case of *Blackaby v. L. & N. R. Co.*, 213 Ky. 368, the syllabus reads:

"Master must furnish servant with reasonably safe instrumentalities for work.

"Where tool is so simple that person of ordinary intelligence and experience can at once perceive safe and proper mode of operating it, and any defects can be easily and readily observed by servant, master is relieved of duty to inspect.

"Injuries to servant while using tools so simple that person of ordinary intelligence and experience can readily observe defects, are ordinary hazards of occupation, risk of which he assumes on accepting employment.

"Railroad held not liable for injuries to section hand while using tie tongs, in that hooks of such tool were not sharp enough to safely grip ties, where tool was so simple that person of ordinary intelligence could at once perceive safe and proper method of operating it, and resulting danger when hooks became dull could be observed by anyone of ordinary skill and experience."

In the case of *Thorn v. New York City Ice Co.*, 53 N. Y. Sup. Ct. Rep. 497, it was held the employer was not liable for injury received by an employee when using a dull ice hook.

As indicated, plaintiff pleaded dangerous ice as well as dangerous tongs, and the jury returned findings of fact to the effect plaintiff was injured while handling "left-over" ice with tongs, it was more dangerous to handle such ice than new ice, plaintiff did not realize the danger, and defendant had not warned him. The jury did not find, however, that this caused plaintiff to fall from the top of the ice box, and even if the jury were of the opinion quality of ice contributed to the accident, liability was predicated in part at least on defective ice tongs. The result is, there must be a new trial.

There was some evidence that plaintiff was not handling left-over ice when he was injured, and at the next trial the issues with respect to defendant's negligence will be: whether plaintiff was injured when putting a 100-pound cake of ice, which had been on the wagon for about two hours the day before, in the ice box with tongs; whether defendant should have anticipated plaintiff would handle the cake of ice in the manner in which he did handle it; and whether defendant should have warned plaintiff of the danger. The issues with respect to assumption of risk and contributory negligence on the part of plaintiff will be: whether plaintiff knew or had grounds for knowledge and appreciation of the risk attending what he was doing, and whether he acted with reasonable prudence.

The judgment of the district court is reversed, and the cause is remanded for a new trial.